HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
David I. Wasserman (Bar No. 275987)
(E-Mail: david_wasserman@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MELANIE WILLIAMS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 18-131-GW |
|---|---|
| Plaintiff, | |
| v. | **MELANIE WILLIAMS' POSITION RE: SENTENCING; EXHIBITS** |
| MELANIE WILLIAMS, | |
| Defendant. | |

**"I made poor decisions with my life, and I understand that now I have to pay the consequences, I've failed in my life, far more than I've succeeded, that's why I thank the Government for giving me a second chance by removing me from that awful lifestyle I was living in and giving me this chance to change my life around for the better, there is no justification for my actions at all, and I'm profoundly sorry for the pain & trauma the victims in this case have suffered from."**

- Melanie Williams[1]

---

[1] Hereinafter referred to as Exhibit A.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................2

II.   OBJECTIONS TO THE PRESENTENCE REPORT...........................................2

III.  SENTENCING LAW ......................................................................................4

IV.   HISTORY AND CHARACERTISTICS OF MELANIE WILLIAMS ................4

V.    NATURE AND CIRCUMSTANCES OF THE INSTANT OFFENSE................7

VI.   THE SENTENCE MUST PROVIDE MELANIE WITH MUCH NEEDED EDUCATIONAL AND VOCATIONAL TRAINING AND MENTAL HEALTH CARE IN THE MOST EFFECTIVE MANNER..................................8

VII.  A SENTENCE OF FIFTEEN YEARS IMPRISONMENT IS MORE THAN SUFFICIENT TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, DETER FUTURE CRIMINAL CONDUCT, AND PROTECT THE PUBLIC..10

VIII. CONCLUSION ...........................................................................................11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gall v. United States*,
  552 U.S. 38 (2007)...................................................................................................4

*Kimbrough v. United States*,
  552 U.S. 85 (2007)...................................................................................................4

*Pepper v. United States*,
  131 S. Ct. 1229 (2011).............................................................................................4

*United States v. Booker*,
  543 U.S. 220 (2005).................................................................................................4

**Statutes**

18 U.S.C. § 3553(a) ....................................................................................................4

**Other Authorities**

2010 Psychological Report by Dr. Charles Wasserman ..............................................9

2018 Psycho-Educational Report by Dr. Juliette Boewe ....................................5, 6, 9

Defendant Melanie Williams, by and through her attorney of record, Deputy Federal Public Defender David I. Wasserman, hereby submits her position regarding factors relevant to sentencing.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  January 22, 2019          By  /s/ DAVID I. WASSERMAN

DAVID I. WASSERMAN
Deputy Federal Public Defender
Attorney for MELANIE WILLIAMS

1

## I. INTRODUCTION

Melanie has grown up with parents in incarceration, changes of home, placements in foster care, living with pimps, and in hotels. There has been no consistent support over her lifetime. As a teen mother who dropped out of school, she had no job skills and turned to prostitution because she was an easy victim for pimps to manipulate. Her parents did not provide modeling of how to live life within the boundaries of the law. Notwithstanding, Melanie knows she should do something to be a better mother and citizen – she just has not been taught what that is or how to do it. Now is our opportunity.

## II. OBJECTIONS TO THE PRESENCE REPORT

The defense has no substantive objections to the presentence report ("PSR"). The defense makes the following non-substantive corrections to the PSR[2].

- ¶ 124 - Melanie has four paternal half-sisters and two paternal half-brothers. (The numbers are reversed in the PSR). Furthermore, Melanie does have contact with her sister Tecola Foster.

- ¶ 125 - Melanie never received nice dresses from her mother. And, although her mother had a big house in Florida at one time, Melanie's mother was living in Las Vegas at the time Melanie was living with her. Furthermore, Melanie's mother is not currently a fugitive. Rather, Melanie's mother is incarcerated.

- ¶ 132 - K████ was raised by Melanie's sister, Tecola Foster, not by LaTray Davis' sister. S████ R██████ lives with Melanie's sister, Tecola Foster, in Lancaster. Melanie raised S████ until Melanie's arrest for the instant offense.

- ¶ 139 - Melanie has a scar on her lip from the car accident in ¶ 140, not from battery acid, as noted in ¶ 139.

- ¶ 140 - Melanie did not break a finger in this accident.

- ¶ 156 - Melanie does not use alcohol, and she did not use it in 2017.

_____

[2] Inaccuracies in the PSR should be attributed to defense counsel, who relayed facts to the USPO for the PSR, not Melanie.

2

The defense makes the following non-substantive corrections to the Recommendation Letter.

- Rec. Ltr. at 6 - Melanie disagrees with the contention that she did not raise any of her children.  She did raise S█████ until her birth to her arrest.  She also raised K█████ from birth until age 1, while Melanie was a resident in a foster care home.

The defense requests that the Court impose a 180-month term of imprisonment, followed by five-years of supervised release.  Furthermore, **the defense objects to supervised release conditions number 8 and 9**.

Condition 8 as recommended by probation reads:

"The defendant shall possess and use only those computers and computer-related devices, screen user names, passwords, email accounts, and internet service providers (ISPs) that have been disclosed to the Probation Officer upon commencement of supervision. Any changes or additions are to be disclosed to the Probation Officer prior to the first use. Computers and computer-related devices include personal computers, personal data assistants (PDAs), internet appliances, electronic games, cellular telephones, and digital storage media, as well as their peripheral equipment, that can access, or can be modified to access, the internet, electronic bulletin boards, and other computers."

Condition 9 as recommended reads:

"All computers, computer-related devices, and their peripheral equipment, used by the defendant shall be subject to search and seizure. This shall not apply to items used at the employment's site, which are maintained and monitored by the employer."

These conditions are unnecessary and unduly burdensome.  The conditions, as phrased and in conjunction with each other, would permit the USPO and law enforcement to search any and all devices and accounts without any suspicion of any wrongdoing or violation of supervised release.   A suspicionless search condition in unnecessary, not narrowly tailored to the offense, and is unduly harsh.  The Court should reject these terms.

Finally, should Melanie be subject to the aforementioned computer-based conditions, the defense requests that the payment of costs associated with such monitoring be subject to her ability to pay.

3

## III.  SENTENCING LAW

The Sentencing Guidelines are not mandatory and a district court may not presume that the Guidelines range is reasonable.  *See United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  The Guidelines are entitled to no more weight than any of the other 18 U.S.C. § 3553(a) sentencing factors. *Pepper v. United States*, 131 S. Ct. 1229, 1249 (2011).   The Court must fashion a sentence that is appropriate, taking into account all of the section 3553(a) factors. *Gall*, 552 U.S. at 49-50.  Under section 3553(a), a sentence should be sufficient, but not greater than necessary, to achieve the goals of sentencing. *See also Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Through this directive of parsimony, Congress embedded in federal sentencing legislation the moral imperative to impose on any individual the least amount of suffering demanded by the general welfare.  Consideration of the advisory Guidelines range, while required, is subordinate to the overarching Congressional mandate that the punishment be no greater than necessary to achieve the objectives of sentencing.  As such, the sentencing Court must impose a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing.

## IV.  HISTORY AND CHARACERTISTICS OF MELANIE WILLIAMS

Melanie Williams never really had a family.  Her parents never married and Melanie's father, Melvin Foster, was in prison when Melanie was born.  Debra Williams, Melanie's mother, used drugs while pregnant with Melanie and beat Melanie mercilessly when she was a young girl.

> [On or about February 2000,] "Child Melanie Williams' mother, Debra Williams has used inappropriate physical discipline on the child, in that the child's mother has hit the child with a belt as a regular form of discipline. Said inappropriate discipline of the child is excessive and has caused the child unreasonable pain and suffering. Further such conduct by the child's mother endangers the child's physical and emotional health and safety and places the child at risk of serious physical and emotional harm and damage and further physical abuse."

4

Exhibit B - Department of Child and Family Services Interim Review Report at 4 (hereinafter "Interim Review Report").

Not long after this abuse was recorded, Melanie's mother was arrested, convicted, and sentenced to approximately ten years in prison for bank fraud.  As a result, Melanie was placed with her grandmother and, at the age of seven, a man who was living with Melanie's grandmother as a tenant molested Melanie.  He started by manipulating Melanie, giving her candies to get her attention, and then he proceeded to molest her for several months.  From the ages of 12 to 14, Melanie was in multiple foster homes and falling "behind academically because she has not been exposed to spelling, etc." Exhibit C - 2018 Psycho-Educational Report by Dr. Juliette Boewe (hereinafter "2018 Report") at 5 (quoting records from the Department of Mental Health at Kedren). At age 14, Melanie had her first child.  Even after becoming a mother, Melanie wet the bed until the age of 16.  *Id*.

When she was about 16 years old, Melanie met a woman named "Denice"  on Facebook.[3]  Denice was approximately ten years older than Melanie and came to live with her at Melanie's grandmother's house.  2018 Report at 3.  Denice had money and clothes and would leave at night and come back in the morning.  Melanie was curious and asked Denice what she did.  In response, Denice invited Melanie along one night.  Denice told Melanie that what she did was easy and that she could come and see and did not have to do anything.  Denice was grooming Melanie to become a child prostitute.  *Id*.

Denice took Melanie to an apartment where she met another women and a man, whom Melanie later realized was a pimp.  Denice gave Melanie clothes and did Melanie's hair.  2018 Report at 3.  Then Melanie, Denice, the other woman, and the man, left the apartment in the man's car.  The pimp dropped off Denice and the other woman and then asked Melanie how old she was; Melanie replied that she was 16.  He

---

[3] "Denice" is a pseudonym.

then told Melanie what to do. *Id.* She got out of the car and waited for a "trick," but told the first man who stopped that she was waiting for a friend. The pimp got mad at her. She got in the next car that came by. Once inside the car, the driver drove off, pulled a knife on Melanie, took off all of her clothes and raped her. He did not use a condom. When Melanie cried, he told her to shut up and chastised her. She begged him not to kill her because she had a baby. When the pimp picked her up and saw Melanie, he told her that was just the way it was going to be; he said that it was called "a bad date." Melanie asked for Denice; the pimp told Melanie that police arrested Denice and that she was in jail. Confused, traumatized and with no way home, Melanie slept at the pimp's apartment. He told her she was his now and would work for him. . *Id.*

The next morning, Melanie wanted to go home, but needed to find an excuse to get out the situation. After she and the pimp bailed Denice out of jail, Melanie said she needed to get clothes from her grandmother's house. This was Melanie's excuse to escape. Once she arrived home, Melanie told her grandmother that she did not want Denice living with them anymore. Her grandmother acceded to her request and asked Denice to leave. *Id.*

After she was coerced into prostitution and raped, Melanie's life continued to fall apart. Melanie's then-legal guardian and grandmother Bessie Clemmons stated "I cannot take care of Melanie. She will not obey me. She will not stay here, and I do not want her in my home. I am not going to be responsible for Melanie any more. You need to come and get her out of my home." Interim Review Report at 7.[4] After she was kicked out of her grandmother's home, Melanie lived in several foster care facilities. She had three daughters from different men, one of whom is unknown, one

---

[4] Ms. Clemmons passed away while Melanie was in custody.

who was abusive to her, and one of whom was her pimp. Her daughters are ages 3, 6, and 7.[5]

Melanie ran away from her last foster home when she was 18 years old. First, she worked for a caregiver, and then lived with her mother and sister in Las Vegas. After returning to California, Melanie was vulnerable and wanted to be with someone. After getting involved with a pimp, she started working as a prostitute. One night, while working, a car hit Melanie. After being struck by the car, Melanie's head hit the ground hard and she was left hospitalized for two weeks with a broken leg and stitches in her bottom lip (as she lost her front teeth when she hit the ground). After being hit by a car, Melanie sank into a deep depression, exhibited poor self-esteem, and simply gave up on life. *See* 2018 Report at 12 ("Melanie reports a negative self-image both in terms of personal and physical attributes, and having a very low confidence level in her ability to make decision, solve problems, and/or be dependable, when compared to others her age.") She began getting tattoos on her face, living recklessly, and started having negative law enforcement contact (largely related to her work as a prostitute). *See* PSR ¶¶ 66-68; 75-85.

Without proper guidance and armed only with knowledge of the streets, Melanie finds herself both a victim and a perpetrator. It is against this backdrop that the instant offense occurred.

## V. NATURE AND CIRCUMSTANCES OF THE INSTANT OFFENSE

At the time of the instant offense, it was very difficult for Melanie to comprehend the damage she was inflicting upon others. Melanie's behavior was learned and normalized due to the lack of positive support structures in her life. The damage done to the victims in this case is the very same damage that had been previously inflicted upon Melanie.

---

[5] Melanie's middle daughter K███ was supposed to be named K██, but Melanie misspelled it on the birth cer████te.

"I would never want my daughters to live the street lifestyle, nor to go through what I put these victims through. I apologize again for my behavior and poor decisions. I want to use this time in prison to become a better person and a better parent.

I hope to be the mother my girls deserve."[6]

As Dr. Boewe notes, with an engaged and adequate support system, Melanie can rehabilitate. Although she will be serving a long sentence, Melanie will be released at a relatively young age. With consistent and concentrated resources, she can live a productive, fruitful life while on supervision and beyond. However, the first step to ensuring that Melanie receives the treatment necessary is to identify and evaluate her educational deficits and mental health needs.

## VI. THE SENTENCE MUST PROVIDE MELANIE WITH MUCH NEEDED EDUCATIONAL AND VOCATIONAL TRAINING AND MENTAL HEALTH CARE IN THE MOST EFFECTIVE MANNER

California's special education system failed Melanie. As Dr. Boewe notes in the 2018 Report on page 8:

"[Melanie's educational] challenges were attributed to emotional disturbance, and it appears that intellectual and learning disabilities were not properly identified or treated and addressed. While it's clear there were social/emotional issues that affected her learning, failing to address her low cognitive profile and expecting her to work to unrealistic standards probably exacerbated her behavioral challenges and enhanced her social/emotional frustrations."

To this day, Melanie struggles with "working at an adequate pace, shifting what she is doing to obtain a better result, understanding what to do, sustaining her focus and effort, being able to attend to and process more than one thing at a time, and being able to attend to what is required for a sustained period of time." 2018 Report at 10. Because Melanie was not properly socialized to experience prolonged success in work and in family/home setting, Melanie has trouble effectively problem-solving. *Id.* at 10-12. It is clear that Melanie's medical and social history, as well as her mental illness

---

[6] Exhibit A.

(discussed below) and lack of consistent schooling, have contributed to a lower cognitive profile over time. Unsurprisingly, Melanie's "overall thinking and reasoning abilities exceed those of only approximately 2% of individuals her age." *Id.* at 7; Exhibit D - 2010 Psychological Report by Dr. Charles Wasserman (hereinafter "2010 Report") at 8 ("Test results indicate that Melanie's current overall functional level of intelligence falls within the Mentally Defective range. . . [and] her extremely low score obtained on the Block Design subtest is of concern, as low scores on this subtest are oftentimes consistent with findings of organic dysfunction.")

In addition to her educational deficits, Melanie suffers from severe mental health issues. As noted, Melanie has suffered abuse and neglect from family members as well as strangers. Given the lack of safety and security Melanie has lived with for almost the entirety of her young life, it is no surprise that Melanie suffers from "possible Schizophrenia, Post Traumatic Stress Disorder, and Adjustment Disorder with mixed Anxiety and Depressed Mood. Specifically, Post-Traumatic Stress, Generalized Anxiety, Persistent Depression, and Major Depression fell within the Prominent range." 2018 Report at 11-12. The level of anxiety and insecurity Melanie faced daily is evident after reading her letter to the Court and, specifically, her thanks to the federal government for its prosecution. *See* Melanie Williams Letter to the Court ("The federal government do not know how happy I am to be here, I am happy as in I'm truly thankful to be here"); 2018 Report at 3 ("Melanie reports that sex is not pleasurable. She said being in jail is a break, and it feels so good to wake up and not have to catch a date. She reports "I was so tired." She cried when sharing this.")

As noted both by Dr. Boewe and in prior evaluations, someone who presents with Melanie's cognitive and emotional profile typically qualifies for the Regional Center services provided to individuals with intellectual disabilities. *See* 2018 Report at 16, ¶6; *see also* Exhibit E - Health and Education Passport ("Regional Center should be contacted to ascertain if she is eligible for any services they provide. Consideration should be given to engage Melanie in a comprehensive neurological evaluation.

9

Therapy will need to help Melanie deal with anger management issues in addition to transference issues. She has h/o parental rejection, neglect and abandonment and therapy also need to address this.")  However, even when her deficits were noted and recommendations made, Melanie lacked the necessary support system to ensure that remedial measures were properly taken.  As such, Melanie has never received the educational, emotional, or psycho-social assistance necessary to deal with the variety of issues facing someone with her history of trauma and abandonment.

When she is released, Melanie will need services that are "comprehensive and encompass psychological care, psychiatric treatment, medical services, education, job training, parenting, and daily living skills." 2018 Report at 14.  As Dr. Boewe concludes, "If prepared to live within a structured, supervised setting initially, such as a group home with related services, she will be more successful outside of the correctional setting." *Id.*  Melanie's healing process starts now with a recognition by this Court that she too is damaged and in need of help.  Upon release, it will take the entire community to build Melanie into the woman she desperately wants to be.

## VII.   A SENTENCE OF FIFTEEN YEARS IMPRISONMENT IS MORE THAN SUFFICIENT TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, DETER FUTURE CRIMINAL CONDUCT, AND PROTECT THE PUBLIC

A sentence of 180 months is 30-times longer than any sentence previously served by Melanie.  An immature, 23-year old young woman, Melanie will not be released until she is approximately thirty-five years old.  Her children will be in their teens.  She will have missed most, if not all, of their significant life events.  The next fifteen years of Melanie's life will be consumed by the fear that her children will fall into the same lifestyle that she did.  The mandatory minimum sentence reflects the seriousness of the offense and is more than sufficient to promote respect for the law, protect the public,

10

and deter similarly situated developmentally disabled victims of sex trafficking who may consider committing the instant offense.

## VIII. CONCLUSION

This is Melanie's story. She is a survivor of sexual violence and a victim of sex trafficking. This does not diminish the real trauma suffered by the victims in this case. However, it must not be lost that fifteen years in prison is a significant sentence for a 23-year old intellectually disabled girl who has suffered significant emotional and physical abuse.

Melanie can learn to be a productive member of society, but only if given the opportunity to do so. A fifteen-year sentence accounts for her conduct in this case while recognizing that she too has been a victim and is in need of treatment, not simply incarceration.