NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
LANA MORTON-OWENS (Cal. Bar No. 233831)
JOSEPH D. AXELRAD (Cal. Bar No. 274580)
Assistant United States Attorneys
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3547/7964
     Facsimile: (213) 894-3713
     E-mail:    lana.morton-owens@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-0131-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT AND INITIAL SENTENCING SUBMISSION FOR DEFENDANT MELANIE DENAE WILLIAMS |
| v. | |
| MELANIE DENAE WILLIAMS, aka "Pretty Hoe," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Lana Morton-Owens and Joseph D. Axelrad, hereby files its Objections to the Presentence Report and Initial Sentencing Submission for defendant Melanie Denae Williams ("defendant").

This submission is based upon the attached memorandum of points and authorities, the Presentence Report and the United States Probation Office's ("USPO") disclosed Recommendation Letter filed on

December 26, 2018, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 22, 2019                    Respectfully submitted,

                                           NICOLA T. HANNA
                                           United States Attorney

                                           LAWRENCE S. MIDDLETON
                                           Assistant United States Attorney
                                           Chief, Criminal Division


                                                   /s/
                                           LANA MORTON-OWENS
                                           JOSEPH D. AXELRAD
                                           Assistant United States Attorney

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

Defendant Melanie Denae Williams ("defendant") is before the Court for sentencing for her conviction following a guilty plea to sex trafficking by force, fraud and coercion, in violation of Title 18, United States Code, Section 1591(a)(1).

On December 26, 2018, the United States Probation Office ("USPO") disclosed the Presentence Investigation Report ("PSR"), which calculated defendant's total offense level as 34, and a criminal history category of V, resulting in an advisory Guidelines sentencing range of 235-293 months.  The USPO recommended that defendant be sentenced to 180 months of imprisonment, the mandatory minimum sentence applicable in this case.

As explained herein, the government does not dispute that the USPO properly calculated the Guidelines, however pursuant to the written plea agreement between the parties, the government objects to the calculations and request that the defendant receive the benefit of the stipulated Guidelines calculations set forth in the plea agreement at paragraph 11; namely, a total offense level of 31.

The government has no objections to the factual statements set forth in the PSR, and submits that defendant be sentenced as recommended by the USPO, and as stipulated in the written plea agreement: (1) 180 months of imprisonment; (2) ten years of supervised release; (3) restitution in the amount of $15,000; and (4) a special assessment of $100.

**II.    OFFENSE CONDUCT[1]**

Defendant is a prolific pimp who recruits her victims via her celebrity status on social media and then forces her victims to engage in commercial sex acts while defendant retains the profits.

Defendant recruited E.H. as a commercial sex worker when E.H. recognized defendant as "Pretty Hoe" and wanted to take a photo with her.  Defendant almost immediately put E.H. out on the street to act as a commercial sex worker.  Defendant forced E.H. to prostitute nightly and provide defendant with the proceeds.

On December 24, 2017, E.H. "disrespected" defendant by telling another girl defendant recruited that defendant could be violent.  In response, defendant beat E.H. with a broom, forced her to go outside, get naked, after which defendant threw bleach on E.H., all while recording the events for Snapchat.  Indeed, defendant used her social media platform to repeatedly promote herself as the "most hated hoe in America," all while humiliating her victims on social media.

E.H. told law enforcement that she tried to leave defendant after a few months because defendant was so physically abusive, but defendant threated E.H. and her family in order to force E.H. to return to work for defendant as a commercial sex worker.  As a means of control, defendant handled all the communications and money exchanges with the sex clients because defendant was afraid E.H. would try to keep some of the money.  According to E.H., defendant used physical violence and verbal threats to prevent E.H. from leaving.  The physical violence that defendant employed included bending E.H.'s fingers back, twisting her lips, punching her, and

---

[1] See PSR at ¶¶ 12-30.

2

slapping her in the face.  As another means of ensuring the entire world knew that E.H. was defendant's "property," defendant forced E.H. to have "Melanie" tattooed on E.H.'s wrist and face.  Defendant treated E.H. like a slave, taking all E.H.'s personal identification, phone and belongings.

Defendant's conduct was not limited to E.H.  Instead, as evidenced by defendant's admissions and the evidence in this case, defendant worked hard to promote herself as a pimp and recruited and prostituted other victims, including minors.  Specifically, defendant recruited Minor Victim 1 and 2 at a Halloween party and the two began working as commercial sex workers for defendant.  Defendant knew, as evidenced by text messages, that the girls were minors, yet nevertheless drove them to engage in commercial sex acts with adult men after which defendant retained the proceeds.

**III. GUIDELINES CALCULATION**

According to the USPO, defendant's base offense level is 34 pursuant to U.S.S.G. § 2G1.3(a)(1).  (PSR ¶ 37.)  The USPO applies a three-level upward adjustment to account for the multiple counts defendant admitted to as part of her plea agreement.  (Id. at 43-59.) Defendant's total offense level is then calculated as 34 after the application of a three-level downward departure for defendant's timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Pursuant to the written plea agreement between the parties, the government objects to the application of the three-level multi-count adjustment.  Defendant, while taking responsibility as part of her factual basis for her sex trafficking of two minors, did not plead guilty to those counts and should receive the benefit of the stipulated Guidelines set forth in the written plea agreement.

3

Pursuant to the parties' stipulation, defendant's total offense level should be reduced to 31.  At a Criminal History Category V, defendant's advisory Guidelines range is 168 to 210.  Based on the written stipulated sentencing agreement, the government recommends that defendant receive the mandatory minimum sentence of 180 months, followed by 10-years supervised release, restitution of $15,000, and a special assessment of $100.

**IV.   THE 3553(a) FACTORS**

The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" for determining the appropriate sentence to impose, Kimbrough v. United States, 552 U.S. 85, 93 (2007) (quoting Gall v. United States, 552 U.S. 38 (2007)); and are to be kept in mind throughout the process, Gall, 552 U.S. at 50 n.6.

After properly calculating the Guidelines range, the Court is then required to consider Section 3553(a) factors to decide if they support the Guideline sentence or instead support the imposition of another sentence.  Specifically, the Court should consider the following factors as they apply to a particular case: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to: (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Guidelines; (5) any pertinent policy

4

statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a)(1)-(7); Gall, 552 U.S. at 50 n.6.

### A.   A 180 MONTH SENTENCE IS APPROPRIATE

The government respectfully submits that the appropriate sentence is the mandatory minimum sentence of 180 months. Defendant's serious criminal conduct and criminal history warrant a lengthy prison sentence, however, defendant's age and criminal history demonstrating her prior sexual exploitation mitigate the need for a more serious sentence.

### B.   SEX TRAFFICKING IS A SERIOUS OFFENSE

The nature and circumstances of the offense, as well as the defendant's role in the offense, weighs in favor of the requested 180-month sentence.  In considering the role that the nature and circumstances of the conduct should play in fashioning a sentence, courts have recognized that "[t]he seriousness of a crime varies directly with the harm it causes or threatens.  It follows that the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime."  United States v. Irey, 612 F.3d 1160, 1206-07 (11th Cir. 2010).

Here, defendant exploited her victims for profit.  She used her status as a celebrity to humiliate her victims on social media and used physical force and violence to control her victims, all while making money from the forced sex acts.  The damage defendant did to her victims is unimaginable.  The seriousness of defendant's crimes weigh in favor of a lengthy prison sentence.

The 180-month sentence also accomplishes the remaining 3553(a) goals.  For example, the requested sentence will provide specific and general deterrence for other individuals who may be inclined to engage in similar conduct.  Defendant, who is not new to prison, will also be provided with much needed educational and vocational training to allow her to be a productive member of society.

Moreover, defendant's ten-year term of Supervised Release following her term of imprisonment will ensure the protection of the community.  Defendant's agreement to make restitution payments to her victims shows defendant is on the right track towards making amends for her conduct and turning her life around.

### C.    DEFENDANT'S PERSONAL CHARACTERISTICS MITIGATE IN FAVOR OF THE MANDATORY MINIMUM SENTENCE

Defendant's conduct alone would most certainly warrant a sentence in excess of the mandatory minimum sentence; however, the Court is required to examine the totality of the circumstances, including defendant's personal characteristics.  Defendant's personal characteristics, including her challenging upbringing and a criminal history that demonstrates defendant was herself a victim of human trafficking, stand in mitigation and warrant the application of the mandatory minimum sentence.  It is not a justification for defendant, who was likely herself trafficked, to turn into a trafficker. Rather, her experience provides context to her personal characteristics and the decisions she has made.  In light of the totality of the circumstances, the mandatory term of imprisonment of 180 months is appropriate.

**V.    CONCLUSION**

For the reasons set forth above, the government requests that the Court impose the following sentence:  (1) 180 months of imprisonment; (2) 10 years of supervised release; (3) restitution of $15,000 in the payment schedule outlined in the PSR; and (4) a special assessment of $100.